324 S.E.2d 145

**Sylvia Mae BOWENS**

v.

**Honorable Elliot E. MAYNARD.**

**Sylvia Mae BOWENS**

v.

**John E. BURDETTE, II.**

**Nos. 16519, 16520.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1984.

Paul R. Sheridan, Logan, for appellant.

Susan Shelton Perry, Perry & Perry, Logan, for children.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

■ The petitioner in these two consolidated cases requests a writ of habeas corpus to show why she should not regain the custody of five children who were entrusted into her care. She also asks that a writ of prohibition be issued to restrain the circuit court from further proceedings regarding the children until a final order in habeas corpus is issued or, in the alternative, to prohibit the circuit court from continuing without first granting intervention to the petitioner. Because the petitioner had lawful physical custody of the children we hold that she had the right, as custodian, to be served with process and to be heard in any proceeding that involved the children. This Court denies the writ of habeas corpus but awards the writ of prohibition as moulded to prohibit the circuit court from entering any order concerning the children until the petitioner is allowed to intervene.

## I

The petitioner, Miss Sylvia Mae Bowens, is a twenty-nine-year-old nurse's aid and private caretaker who currently lives with her parents in Logan County. For eight months before June 1984, Miss Bowens lived in the Adkins' home in Mingo County and cared for Mr. and Mrs. Adkins' five children. During this time it appears that Miss Bowens and the children developed strong emotional bonds. The Adkins children, whose ages range from four to nine years, were placed in the custody of the petitioner by written agreement of Mrs. Adkins on 25 April 1984 and with the apparent acquiescence of Mr. Adkins. On 9 June 1984, Miss Bowens took the Adkins children to her parents' home and stated her intention to adopt the children after the statutory six month period under *W. Va. Code* 48-4-9(a) [1984] had elapsed.

On 3 August 1984 Mr. and Mrs. Adkins were divorced. Although the Adkins children were not residing with either parent the court awarded the father permanent custody. Thereafter, Mr. Adkins went to Miss Bowen's residence but was repulsed in his attempts to regain the custody of his children. Because Miss Bowens feared that the father would return and that the children would be abused by Mr. Adkins, she contacted the Department of Human Services.

Miss Bowens' apprehension regarding Mr. Adkins was well-founded. The record discloses that the Department of Human Services had first investigated allegations that the Adkins children were abused in 1980. A child psychiatrist stated that "these are the most emotionally disturbed children she has ever encountered" and added that "all five children have been severely abused physically and sexually by their parents." [1]

After Mr. Adkins attempted, unsuccessfully, to regain the children's custody, the Department of Human Services filed a petition alleging abuse. Pursuant to this petition, a hearing was held for the Adkins children on 10 August 1984. Mr. and Mrs. Adkins, their appointed counsel, members of the Department of Human Services, an assistant prosecuting attorney for the Department of Human Services, and an appointed counsel for the children were all present. Miss Bowens attended the hearing too, but was not served with notice and was not permitted in chambers during the

---

**1.** A complaint that Miss Bowens whipped the Adkins children "constantly" was similarly examined by a social worker who, however, reported that Miss Bowens resorted to corporal punishment to control the children's disruptive behavior. The social worker also noted that "the children were extremely attached to Ms. Bowen and she to them."

hearing—all contrary to the procedural statutory rights of a lawful custodian.

After the hearing, the circuit court placed the children in the custody of the Department of Human Services. The order acknowledges that Mr. and Mrs. Adkins did not, at that time, have custody of their children yet, inexplicably, did not consider allowing the children to remain with Miss Bowens although, by all indications, the children were adequately cared for there. As a result of this order the children were scattered among five foster homes. According to medical reports in the record, the children have not adjusted well to their dispersal and are extremely depressed. Two of the Adkins children were placed in hospital because they exhibited suicidal tendencies. Initially Miss Bowens visited the children, but was later told she could not continue to do so.

On 27 September 1984, Miss Bowen attempted to intervene in the ongoing abuse proceedings against Mr. and Mrs. Adkins. Although the parent's counsel had no objection to Miss Bowen's intervention, her inclusion in the proceedings was denied.

## II

■ *W. Va. Code* 49–1–5(5) [1981] defines a custodian as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceedings." Miss Bowens was entrusted, at least implicitly by both parents, with the custody of their children. As the custodian Miss Bowens had a right to participation in the subsequent abuse proceedings. *W. Va. Code* 49–6–1(b) [1977] states that in a child neglect or abuse case, "[t]he petition and notice of the hearing shall be served upon both parents and *any other custodian,* giving to such parents or *custodians* at least ten days notice, ..." [Emphasis added.]

■ In addition a custodian, like a parent, has a statutory right to be represented in any abuse or neglect proceeding and a "meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." *W. Va. Code* 49–6–2(a) & (c) [1984]. None of these clearly delineated procedural rights was accorded to our petitioner.

Child neglect and abuse procedures that include the custodian of the children in all the proceedings are calculated to achieve a valuable social goal. Their motivating factor is the often stated standard of the "best interests of the child." As this Court stated in Syllabus Point 2 of *Lipscomb v. Joplin,* 131 W.Va. 302, 47 S.E.2d 221 (1948): "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided."

■ A custodian, freely chosen by the children's parents, may not be deprived of her custody rights by the Department of Human Services arbitrarily. The Department must have good cause before proceeding against the custodian and then afford her a reasonable opportunity to rebut charges that her custody is wanting. See Syllabus Point 1, *State v. Scritchfield,* 167 W.Va. 683, 280 S.E.2d 315 (1981). In this case, the court had before it allegations of child abuse by the natural parents who, however, *no longer had custody of their children.* For some unexplained reason, the court refused to allow the children's custodian to intervene in the proceedings and, instead, passed her by entirely. It may, indeed, ultimately appear that there is such a unity of interest between the appointed custodian and the abusing parents that custody is better placed in the Department. Nonetheless, custody determinations, to the maximum extent possible, should be custom crafted in each case with due attention to the welfare of the children.

■ The best interests of the child standard insists that the custodian be included in proceedings involving her wards. Indeed, if a party has legitimate physical custody of children, that party has the right to be served with process and to be heard in any proceedings dealing with those children. If the custodian is not served with process, she has the right to intervene in the proceedings.

The writ of prohibition prayed for is granted. The writ of habeas corpus, however, is denied because renewed dislocation of the children may be inimical to their best interests at this time and because the circuit court, with the intervention of Miss Bowen, can best decide the proper custody for the Adkins' children.

Case No. 16519    Writ Awarded as Moulded

Case No. 16520    Writ Denied.