STATE OF WEST VIRGINIA

*In re* **D.C., J.R.-1, D.R., R.R., and J.R.-2**

**No. 17-0770** (Cabell County 15-JA-38, 39, 40, 41, and 42)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grandmother L.R., by counsel Steven T. Cook, appeals the Circuit Court of Cabell County's May 25, 2017, order denying her motion to intervene.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison K. Huson, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her motion to intervene upon an erroneous interpretation of controlling authority and failed to require that the DHHR name her as a respondent in the initial petition.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because two children share the same initials, they will be referred to as J.R.-1 and J.R.-2 throughout this memorandum decision.

[2]Petitioner additionally assigns error to the circuit court's decision to separate the siblings. We find, however, that this issue is not properly before the Court. Petitioner failed to raise this issue before the circuit court and failed to include any order wherein the circuit court made such a ruling in her appendix on appeal. Accordingly, we decline to address the issue pursuant to Rule 10(c) of the Rules of Appellate Procedure, which require that a party's brief contain "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."

Further, several of petitioner's assignments of error include specific requests that this Court modify or adopt certain factors or guidelines governing the granting of motions to intervene or otherwise correct a perceived "variance between the lower tribunals in addressing [various degrees of relatives] throughout the State . . . in relation to all abuse and neglect cases[.]" Because petitioner is not entitled to relief in regard to the specific errors of which she complains, we further decline to address her requests to provide the requested direction to circuit courts in ruling on motions to intervene.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2015, the DHHR filed an abuse and neglect petition that alleged the mother exposed the children to repeated instances of domestic violence. According to the initial petition, three of the children were placed in petitioner's care in December of 2014 pursuant to an out-of-home safety plan between the mother and the DHHR. Specifically, the petition indicated that on December 29, 2014, DHHR personnel "determined an out-of-home safety plan would have to be implemented with the filing of a petition" since the mother violated a prior family court order prohibiting contact with the father. It was also indicated that the mother and the children resided in petitioner's home. The two remaining children were placed with a different grandmother, M.D.[3]

At an adjudicatory hearing in September of 2016, the circuit court was made aware of an issue concerning the children's placement. According to the record, "five children [were] removed – from the [g]randmother's." It is unclear how all five children came to reside in the same home, but the reference appears to be in regard to petitioner. Regardless, the circuit court was informed that the removal was the result of "non-compliance" and was asked if it wished to address the issue of the children's removal. According to the record, the circuit court declined to address the issue at that time. Thereafter, the parents' parental rights to the children were terminated.[4]

According to petitioner, she filed a motion to intervene in this matter in November of 2016. However, the motion to intervene contained in the appendix on appeal is unsigned and does not include a certificate of service, although the circuit court's docket sheet does reflect the filing of such motion on November 3, 2016. Thereafter, the circuit court held a hearing in February of 2017, during which petitioner's counsel announced that petitioner filed a motion to intervene. At that time, petitioner indicated that the allegations upon which the children were removed from her home were false and asked that she be considered as a permanent placement. The DHHR then indicated that the children were removed from petitioner's home following an investigation into conditions therein and upon evidence that petitioner permitted the mother to

---

[3]During the course of the proceedings, the DHHR filed an amended petition after the mother gave birth to another child, P.C., who is not at issue in this appeal.

[4]The parties do not include the dispositional order in the appendix or otherwise indicate on what date the parents' parental rights were terminated. However, in the order denying petitioner's motion to intervene, the circuit court specifically found that "[a]t the time the [petitioner] filed her motion, the parental rights of the biological mother had been terminated and [petitioner] no longer ha[d] a legal relationship to the children."

have unsupervised contact with the children following the termination of her parental rights. The guardian further indicated that petitioner was provided services to correct certain issues in her home but she failed to comply. The guardian also corroborated the fact that petitioner permitted the mother to have unsupervised contact with the children against the circuit court's order. Moreover, the guardian indicated that a multidisciplinary team ("MDT") meeting was conducted in order to achieve permanent placement in petitioner's home, during which it was made clear that the children would be removed if petitioner permitted the mother to have unsupervised contact with them. Finally, the guardian indicated that, following the investigation, petitioner's home was no longer eligible to be considered for foster placements. Ultimately, the guardian informed the circuit court that the children were thriving out of petitioner's home. Accordingly, the guardian believed that petitioner's motion to intervene was moot. Despite finding that the children's best interests were served by leaving them in their pre-adoptive placements, the circuit court nonetheless permitted petitioner to develop a record on her motion to intervene at a later date.

Petitioner filed a memorandum in support of her motion to intervene in March of 2017. That same month, the circuit court held a hearing on the motion. Ultimately, petitioner admitted that the mother had been around the children without proper supervision following the termination of the mother's parental rights and that her status as a foster provider was "closed . . . due to concerns over infestation[.]" Based on this evidence, the circuit court denied petitioner's motion to intervene.[5] It is from the order denying her motion to intervene that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

---

[5]The parental rights to all children were terminated below. According to respondents, the children have either been adopted or will shortly be adopted by their respective caregivers.

On appeal, petitioner argues that, as the children's custodian, she should have been provided notice of the proceedings and an opportunity to be heard from the outset of the case under West Virginia Code § 49-4-601(e) and (h).[6] She further argues that the circuit court erred in denying her motion to intervene, based upon similar arguments that, as the children's custodian, she was entitled to participate in the proceedings. We do not agree. First, it is important to note that petitioner only had custody of the children pursuant to an out-of-home safety plan executed by the mother and the DHHR. In fact, petitioner acknowledges that "it was the . . . DHHR that made the placement" that resulted in the children being left in her care. While petitioner relies heavily on our prior holding in *Bowens v. Maynard*, 174 W.Va. 184, 324 S.E.2d 145 (1984), to argue that her custody of the children warranted her participation in the proceedings, she fails to acknowledge this Court's later distinction of that decision. Specifically, in addressing *Bowens*, the Court noted that case "was decided in the factual context of an individual who was a lawful custodian *prior* to the initiation of abuse and neglect proceedings, which clearly is the type of custodian contemplated by the provisions of West Virginia Code § 49-6-2(c) [now West Virginia Code § 49-4-601(h)]." *In re Jonathan G.*, 198 W.Va. 716, 727, 482 S.E.2d 893, 904 (1996). In clarifying the operation of this statute, the Court held that a person who obtains physical custody after the initiation of abuse and neglect proceedings does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians. *Id.* at 729, 482 S.E.2d at 906.

In addressing a situation similar to petitioner's, the Court again reiterated that obtaining custody prior to the initiation of an abuse and neglect proceeding was essential to application of West Virginia Code § 49-4-601(h) for purposes of participation in such cases. In *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946 (W.Va. May 5, 2017) (memorandum decision), we denied mandamus relief to a foster parent seeking to intervene in abuse and neglect proceedings. In that case, the foster parent grandfather put forth an argument similar to petitioner's; namely that, as the child's custodian, he was entitled to participate in the proceedings under W.Va. Code § 49-4-601 or, alternatively, should have been permitted to intervene in the proceedings. In resolving that matter, the Court indicated that "our focus is on whether [the grandfather] qualifies as a 'party . . . having custodial . . . rights or responsibilities' which would also entitle him to the greater rights bestowed by West Virginia Code § 49-4-601(h)." *R.H.* at *3. We discussed both *Bowens* and *Jonathan G.*, stating that the latter clarified that "the 'custody' discussed in [the] context [of abuse and neglect proceedings] refers to a person who became a child's custodian '*prior* to the initiation of abuse and neglect

---

[6]"The petition and notice of the hearing shall be served upon both parents and any other custodian." W.Va. Code § 49-4-601(e).

In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

W.Va. Code § 49-4-601(h).

proceedings[.]'" *R.H.* at *3 (citing *Jonathan G.*, 198 W.Va. at 727, 482 S.E.2d at 904). Further, this Court "confirmed that a person who obtains physical custody after the initiation of abuse and neglect proceedings - such as a foster parent - does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians." *R.H.* at *3 (citing *Jonathan G.*, 198 W.Va. at 729, 482 S.E.2d at 906). Accordingly, the Court found that "for the [grandparent] to qualify as a custodian under § 49-4-601(h) where he would have the right to be heard, testify, and call witnesses in the abuse and neglect proceedings, he must have held custodial rights to the children prior to the initiation of the abuse and neglect petition." *R.H.* at *3. Despite acknowledging that "[a]t most, we can determine that the children were left at the [grandfather's] home for a three-week period before the abuse and neglect petition was filed[,]" the Court ultimately held that the facts of the case "simply do not establish the existence of a pre-petition custodianship." *Id.* at *4.

Similarly in this matter, although the children were left in petitioner's care for roughly the same time period as the grandparent in *R.H.*, it is clear, as petitioner acknowledges, that the children were placed there by the DHHR attendant to the initiation of abuse and neglect proceedings. While it is true that the DHHR delayed in filing the petition, the record shows that petitioner was informed that the children were being placed in her care pursuant to "an out-of-home safety plan [that] would have to be implemented with the filing of a petition[.]" As such, we again find that a person who obtains physical custody after the initiation of abuse and neglect proceedings, such as a foster parent like petitioner, does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians. *Jonathan G.*, 198 W.Va. at 729, 482 S.E.2d at 906. Accordingly, we find no error in the fact that the DHHR did not include petitioner in its initial petition, or in the circuit court's denial of petitioner's motion to intervene.[7]

Moreover, we note that petitioner did participate in this matter to some extent. Specifically, the record indicates that petitioner was present for, at least, the adjudicatory hearing. Further, to the extent that petitioner argues that her purported status as a custodian entitled her to the right to participate in the proceedings, we note that every specific event in which she claims she was denied the right to participate occurred after the children were removed from her care in August of 2016, when she could no longer have asserted any possible custodial right to the children. Specifically, petitioner refers to certain attempts to contact social workers, DHHR supervisors, and the DHHR to "retrieve the children" in August and September of 2016. Petitioner fails to recognize, however, that the children no longer resided in her home at that point and, thus, her argument that she was then their custodian has no factual basis. For these additional reasons, we find no error in the circuit court's denial of petitioner's motion to intervene.

Most importantly, the Court reiterates that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be

---

[7]Petitioner further argues that, as a named party to the proceedings, she should have been appointed counsel under West Virginia Code § 49-1-604(f)(1), (2), and (3). Because we find no error in regard to petitioner's exclusion from the initial petition, we find she is similarly entitled to no relief in this regard.

guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W.Va. 91, 755 S.E.2d 8 (2014). Here, the record is clear that the children's best interests were not served by placement with petitioner, as evidenced by their eventual removal. While petitioner argues on appeal that she should have been allowed to present evidence to show that the allegations upon which the children were removed were false, she fails to acknowledge that she admitted to the circuit court that her status as a foster care provider was revoked "due to concerns over infestation[.]" Moreover, the record shows that petitioner permitted the mother to have unsupervised contact with the children following the termination of her parental rights and directions from the circuit court to not permit her to have such contact. Further, the record also shows that, contrary to petitioner's arguments that she was not permitted to participate in the proceedings, the DHHR implemented services in petitioner's home through the MDT in order to remedy the conditions that necessitated the children's removal. According to respondents, however, petitioner "would not comply[.]" Thus, it is clear that the children's best interests were served through placement outside petitioner's home.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 25, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker