IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 20-0052
_____

FILED
**October 9, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: H.L. AND M.L.

_____

Appeal from the Circuit Court of Tucker County
Honorable Lynn A. Nelson, Judge
Civil Action Nos. 2019-JA-18 & 2019-JA-19

VACATED, IN PART, AND REMANDED WITH DIRECTIONS
_____

Submitted: September 1, 2020
Filed: October 9, 2020

David C. Fuellhart, III, Esq.
Isner Law Office
Elkins, West Virginia
Attorney for Petitioner A.L.

Heather M. Weese, Esq.
Law Office of Heather M. Weese, PLLC
Elkins, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
John M. Masslon II, Esq.
Assistant Solicitor General
Katherine A. Campbell, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for DHHR

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

2.      "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

**HUTCHISON, Justice:**

The petitioner, A.L.[1] ("Mother"), appeals the December 17, 2019, disposition order of the Circuit Court of Tucker County that terminated her parental rights to her two children, H.L. and M.L. In this appeal, Mother contends that the evidence presented at the adjudicatory hearing was insufficient for the circuit court to make the finding that she was an abusive and neglectful parent. She argues that the circuit court, at most, should have adjudicated her as a "battered parent" as a result of the domestic violence inflicted upon her by the children's father, M.L. ("Father"), and dismissed the abuse and neglect petition filed against her. Alternatively, she contends that the circuit court erred by terminating her parental rights instead of employing a less restrictive alternative. The West Virginia Department of Health and Human Resources ("DHHR") and the children's guardian ad litem ("GAL") maintain that the circuit court did not commit reversible error. Upon consideration of the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we vacate the circuit court's adjudicatory order insofar as it adjudicates Mother as an abusive and neglectful parent, vacate the disposition order to the extent that it terminates Mother's parental rights, and remand this case for further proceedings consistent with this opinion. [2]

---

[1] We use initials to identify the parties in cases involving sensitive facts. *See* W.Va. R. App. Proc. 40(e); *see also State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1., 398 S.E.2d 123, 127 n.1 (1990).

[2] The December 17, 2019, order also terminated the parental rights of Father, but he did not appeal the decision and is not a party to this case. Accordingly, our rulings today have no impact upon the circuit court's orders as they pertain to Father.

## I. Facts and Procedural Background

On May 30, 2019, the DHHR filed an emergency petition to institute child abuse and neglect proceedings against Mother and Father, alleging that they had a significant history of domestic violence that was witnessed by their two children. The petition also alleged that the parents had a history of substance abuse and that both were failing to comply with court-ordered drug screening.[3] It was further noted that the oldest child had missed approximately eighteen days of school that year. As a result of these allegations, the children were removed from their parents' custody and placed with their maternal grandparents.

A preliminary hearing was held on July 30, 2019, and the adjudicatory hearing was held on October 29, 2019.[4] At the adjudicatory hearing, the DHHR presented

---

[3] The abuse and neglect petition was filed after Child Protective Services ("CPS") received a referral from the Family Court of Tucker County, which was presiding over the parties' divorce and a domestic violence civil proceeding brought by Mother against Father. The parties had failed to appear for a hearing before the family court, and it was reported that Mother had absconded to Fayette County with the children and refused to cooperate with the GAL or participate in court-ordered drug screening. There were also pending criminal drug charges against Father.

[4] The record shows that the mandatory time frames for holding the requisite hearings were not followed in this case. *See* W.Va. R. Child Abuse and Neglect P. 22 (requiring preliminary hearing to be held within ten days of filing of emergency petition); W.Va. R. Child Abuse and Neglect P. 25 (setting forth time frame for final adjudicatory hearing depending on applicable circumstances). During oral argument, this Court was advised the proceedings were delayed because of a conflict of interest that disqualified the Tucker County prosecutor's office from representing the DHHR in this matter. The Office of the Randolph County Prosecuting Attorney was assigned to serve as substitute counsel for the DHHR.

four witnesses. Elizabeth Smith from Tucker County Community Corrections testified that Mother had one positive drug screen for methamphetamines and amphetamines in May 2019. She also stated that Mother came for a screening in March 2019 but was unable to provide a sample. Ms. Smith further testified that Father told her that Mother uses controlled substances. Rebecca Brenwalt, the CPS worker who conducted the investigation upon receipt of the referral from the family court, testified that she had reviewed emails and Facebook posts wherein Father had threatened Mother.[5] She also testified that she interviewed Mother who told her about several incidents of domestic violence between herself and Father, including one episode where he beat her unconscious. Ms. Brenwalt further testified that Mother had allowed Father to visit the children on at least one occasion while a domestic violence protective order ("DVPO") was in place. Regarding Mother's alleged drug use, Ms. Brenwalt testified that Mother told her that she only used marihuana as a teenager, and that one time, in 2017, Father forced her to snort a white substance that made her sick. Ms. Brenwalt testified that Mother denied any other drug use, which she did not find to be a credible statement because of Mother's positive drug screen. Finally, Ms. Brenwalt testified that Mother had started drug screening in September 2019 as part of the abuse and neglect case and that those screens had been negative. Beverly Goldizen, CPS supervisor for Randolph and Tucker counties, testified that she interviewed the oldest

---

[5] The abuse and neglect petition indicated that the parties had been separated since October 2018 and had not resided together for approximately one year. It appears that, despite their separation, they remained in contact through phone calls and social media.

child, H.L.[6]  H.L. reported several incidents of Father being violent toward Mother.  She also expressed fear of Father, but not of Mother.  Finally, Cheryl Edwards LaNasa, the GAL for the children in the family court cases, testified that the parents were uncooperative during those proceedings.  She stated that she was never able to interview the children and had concerns regarding drug use by both parents.

Mother testified on her own behalf during the adjudicatory hearing, denying that she used controlled substances.  She further testified that she had left Father after some of the early episodes of domestic violence but would return because she thought the family should stay together. When questioned about allowing Father to see the children while the DVPO was in place, Mother testified that she thought the family court ordered her to allow Father to see the children at Easter.  Mother also testified that she was not on drugs, was now drug screening voluntarily, had started attending Davis & Elkins College to get an R.N. degree, and was working full-time at a nursing home.

At the end of the adjudicatory hearing, the circuit court announced that it was adjudicating Mother and Father as abusive and neglectful.  Counsel for Mother objected and asserted that she was a "battered spouse," to which the circuit court responded, "I don't

---

[6] H.L. was eight years old at the time, and M.L. was four.  For reasons that are unclear in the record, Ms. Goldizen's interview of M.L. was "interrupted" and never completed.

doubt that" and then closed the hearing. Thereafter, the circuit court entered its November 19, 2019, order adjudicating Mother as an abusive and neglectful parent. In that regard, the circuit court made the following findings:

> 2. The Respondent mother was ordered by the Family Court to submit to drug screens every Monday and Thursday, with which she failed to comply. On March 26, 2019, she couldn't provide a sample to screen and on May 14, 2019, while her urine screen was negative, the lab result[] from her blood draw the same date was positive for methamphetamines/amphetamines. The Respondent mother continues to deny drug use and disputes the results of the May 14th screen despite the confirmation of a positive result by the lab. She also asserts that she was screening as ordered by the Family Court, however, she was unable to furnish evidence of screens submitted to before her screens in Randolph County in September 2019, after the removal of the children.
>
> 3. In addition to drug use, the Department investigated allegations of domestic violence between the parties that emotionally impacted the children. The Respondent mother admitted to specific instances of domestic violence wherein she alleged the Respondent father hit her until she was unconscious and threatened to kill her. She also told the child protective service worker that he "mentally destroyed her." The children reported a fear of their father and reported that he's mean to their mother and that their mom and dad fight a lot. The oldest child, [H.L.], reported observing her father holding her mother down with a chair and that this occurred in her grandparents['] home and that she was fearful and crying. The Respondent mother was also reported to have allowed contact between Respondent father and the children despite the entry of a domestic violence protective order.[7]
>
> . . . .

---

[7] While the abuse and neglect petition alleged that H.L. had missed several days of school, the evidence presented during the adjudicatory hearing showed that all but one of the missed days were excused absences and that all of H.L.'s grades were As and Bs. Thus, this allegation was not a factor in the circuit court's adjudication.

> 5. The Court hereby deems the testimony of the Respondent mother, [A.L.], to be inherently incredible and contradictory to the compling [sic] evidence against her.

(Footnote added).

The dispositional hearing was held on November 19, 2019. At that time, Mother made a motion for a post-adjudicatory improvement period, which was denied after the DHHR argued that an improvement period would be an exercise in futility because Mother refused to acknowledge her substance abuse. In the alternative to termination of her parental rights, Mother moved to be permitted to transfer her custodial rights to her children to her parents, the children's maternal grandparents with whom they were currently placed.[8] This motion was also denied. Thereafter, the circuit court terminated Mother's and Father's parental rights, finding "no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future." This appeal followed.

## II. Standard of Review

Our standard of review for abuse and neglect cases is well-established. In syllabus point one of *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held:

---

[8] Father joined Mother's motion to transfer their custodial rights to the children's maternal grandparents.

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With this standard in mind, we consider the parties' arguments.

### III. Discussion

Mother first contends that the evidence presented at the adjudicatory hearing was insufficient for the circuit court to make the finding that she was an abusive and neglectful parent. She notes that the only evidence presented to support her alleged use of controlled substances was one failed drug screen. As the DHHR acknowledged, her drug screens during the abuse and neglect case were negative. Mother argues that her refusal to participate in the drug screens ordered by the family court was not actual evidence of drug use; she also maintains that she complied with the family court's order by participating in drug screens in other counties.[9] Finally, Mother asserts that even if her one failed drug

---

[9] The record indicates that Mother lived for a short period in either Kanawha or Fayette County. Other than Mother's testimony, there was no evidence that she participated in drug screens in these counties.

7

screen is considered evidence of drug use, there was no evidence presented that she used controlled substances in the presence of the children and no evidence that her alleged drug use impacted her ability to parent them. Thus, Mother reasons that the circuit court erred by adjudicating her an abusive and neglectful parent based upon her alleged use of controlled substances.

Second, Mother contends that the DHHR failed to prove that she committed domestic violence. She maintains that the only evidence presented showed that she was the victim of domestic violence; there was no evidence that she attempted to harm her children or Father. In fact, the oldest child stated that Mother was the victim of domestic violence; she never reported that her Mother engaged in domestic violence, and she only indicated that she was afraid of Father. Mother also argues that the DHHR did not establish that she failed to protect her children. She maintains that the evidence showed that she was a "battered spouse" who was manipulated by Father such that she and the children were unable to leave. Thus, she argues that the circuit court erred by finding that she was abusive and neglectful based upon the domestic violence. She asserts that, at most, the circuit court should have adjudicated her as a "battered parent" and then dismissed the petition.

West Virginia Code § 49-4-601(i) (2019) mandates that

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and *whether the respondent is abusing, neglecting, or, if applicable, a battered parent*, all of

8

which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

(Emphasis added).  Pursuant to West Virginia Code § 49-1-201 (2018):

> "Battered parent" for the purposes of § 49-4-601 et seq. of this code means a respondent parent, guardian, or other custodian who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence as defined by § 48-27-202[10] of this code, which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

(Footnote added).  As set forth above, the record shows that at the end of the adjudicatory hearing, counsel for Mother objected to the circuit court's finding that she was abusive and neglectful and asserted that the evidence showed that she was a "battered spouse."

---

[10] West Virginia Code § 48-27-202 (2010) provides:

> "Domestic violence" or "abuse" means the occurrence of one or more of the following acts between family or household members, as that term is defined in section two hundred four [§ 48-27-204] of this article:
> (1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;
> (2) Placing another in reasonable apprehension of physical harm;
> (3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts;
> (4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b [§§ 61-8B-1 et seq.] and eight-d [§§ 61-8D-1 et seq.], chapter sixty-one of this code; and
> (5) Holding, confining, detaining or abducting another person against that person's will.

9

Although the circuit court responded, "I don't doubt that," it made no findings of fact or conclusions of law in that regard in its final order. The DHHR characterizes the circuit court's response to the objection made by Mother's counsel as an "off-hand comment," and argues that the circuit court did not err by failing to address Mother's alleged status as "battered parent." We disagree.

The issue of whether Mother was a "battered parent" was clearly raised by Mother's counsel. Moreover, the abuse and neglect petition was based upon allegations of both substance abuse and domestic violence. Critically, the record reflects that evidence was presented during the adjudicatory hearing that Mother was repeatedly physically and verbally abused by Father. Indeed, Ms. Brenwalt testified:

> What [Mother] had disclosed to me was that she and [Father] did have lots of severe domestic violence in their relationship. She talked at length about – and I quote, that he had mentally destroyed her.
>
> She talked about several instances, and she had some exchanges on Facebook and text messages where he had made threats to her life. She talked a lot about an instance where he actually hit her until she became unconscious; another incident in a car where he told her he was going to quote, "Splatter her brains out."

Yet, Ms. Brenwalt also testified that Mother had disregarded the DVPO and allowed Father to see the children on at least one occasion. While there are findings in the circuit court's adjudicatory order regarding the domestic violence, there are no specific findings of fact or conclusions of law regarding Mother's alleged status as a "battered parent." Because the record reflects that the issue was raised at the end of the adjudicatory hearing and

10

summarily dismissed by the circuit court without any discussion or an opportunity for the DHHR and guardian ad litem to respond, we find that this case must be remanded for a new adjudicatory hearing. This Court has held that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Having found that a new adjudicatory hearing is warranted, we must vacate both the adjudicatory order to the extent that it adjudicates the Mother as an abusing and neglecting parent, as well as the subsequent dispositional order, insofar as it terminates Mother's parental rights.[11] *See In re A.P.-1,* 241 W.Va. 688, 693, 827 S.E.2d 830, 835 (2019) (explaining that the adjudication and disposition is a two-stage process and parental rights may not be terminated until adjudication is completed). Because the circuit court made no findings of fact or conclusions of law with regard to Mother's alleged status as a "battered parent," our decision today should not be construed as an indication that she satisfies the definition of a "battered parent" as set forth in West Virginia Code § 49-1-201.

---

[11] As we noted previously, our decision in this case does not apply to the circuit court's rulings regarding Father's adjudication and the termination of his parental rights. *See* note 2, *supra.*

11

Absent a ruling by the circuit court on the issue with adequate findings of fact and conclusions of law, the matter is not ripe for appellate review.

Although we are remanding this case for further proceedings because of the circuit court's failure to address Mother's alleged status as a "battered parent," we are nonetheless compelled to address one additional matter regarding the adjudication. While there are findings in the adjudicatory order regarding Mother's failure to submit to drug screening ordered by the family court and her inability to produce evidence to support her claim that she was drug screened in other counties, there is no indication of exactly how many drug screens were missed. Moreover, there is an absence of any finding that Mother's alleged drug use impacted the children. This Court has long recognized that

> "[i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."

Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973). Consequently, the testimony and evidence required to adjudicate a parent as abusive and/or neglectful must be fully developed such that there is "clear and convincing proof." *See* W.Va. Code § 49-4-601(i). In this instance, the circuit court's findings as set forth in the November 19,

2019, adjudicatory order do not indicate that the evidence regarding Mother's alleged drug use was fully developed during the first adjudicatory hearing.[12]

As noted above, Mother has argued that because there was insufficient evidence that she was abusing controlled substances and because there insufficient evidence to show that she failed to protect the children or committed domestic violence, the circuit court should have, at most, adjudicated her a "battered parent" and then dismissed the abuse and neglect petition against her. However, a finding that an adult respondent in an abuse and neglect petition is a "battered parent" does not result in an automatic dismissal of the abuse and neglect petition. Rather, an adjudication as a "battered parent" is a factor to be considered during the disposition phase. *See* W.Va. Code § 49-4-604 (2019).[13] Moreover, "[w]hile this Court has also observed that the rights of the parents are entitled to respect and protection, the rights of the children are paramount[.]" *In re Frances J.A.S.*, 213 W.Va. 636, 643, 584 S.E.2d 492, 499 (2003) (quoting *Bowens v. Maynard*, 174 W.Va. 184, 186, 324 S.E.2d 145, 147 (1984)). In other words, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the

---

[12]We also note that although the record shows a family case plan was filed, there is no indication that the DHHR provided any services to Mother other than requiring her to participate in drug screening beginning in September 2019.

[13] We cite to the 2019 version of the statute as it was in effect at the time this case was pending before the circuit court. Although the statute was amended in 2020, the statutory language pertaining to a "battered parent" was not changed.

children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Therefore, given the seriousness of the allegations in the abuse and neglect petition, and given the circuit court's failure to make findings of fact and conclusions of law regarding Mother's alleged status as a "battered parent," we must remand this case for further proceedings, including a new adjudicatory hearing.

## IV. Conclusion

For the foregoing reasons, we vacate the November 19, 2019, adjudicatory order insofar as it adjudicates Mother as an abusive and neglectful parent, vacate the December 17, 2019, disposition order to the extent that it terminates Mother's parental rights, and remand this case to the circuit court for a new adjudicatory hearing and further proceedings consistent with this opinion. Taking into consideration the length of time that this case has been pending, the circuit court is ordered to hold the new adjudicatory hearing without delay.

The Clerk is directed to issue the mandate in this case forthwith.

Vacated, in part, and Remanded with Directions.

14