# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0545

_____

FILED

June 14, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* H.W.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tera L. Salango, Judge
Juvenile Action No. 19-JA-748

AFFIRMED

_____

Submitted: May 17, 2022
Filed: June 14, 2022

Joseph H. Spano, Jr., Esq.
Pritt & Spano, PLLC
Charleston, West Virginia
Attorney for the Petitioners,
Foster Parents N.S. and C.S.

Patrick Morrisey, Esq.
Attorney General
Brittany N. Ryers-Hindbaugh, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent,
West Virginia Department of Health
and Human Resources

Sandra K. Bullman, Esq.
Bullman and Bullman
Charleston, West Virginia
Attorney for the Respondent,
Mother B.S.

J. Rudy Martin, Esq.
Charleston, West Virginia
Guardian ad Litem for the Minor Child,
H.W.

**JUSTICE BUNN delivered the Opinion of the Court.**

**JUSTICES WALKER and WOOTON concur and reserve the right to file separate opinions.**

**SYLLABUS BY THE COURT**

1.      A circuit court's decision on an individual's motion for permissive intervention in a child abuse and neglect proceeding pursuant to West Virginia Code § 49-4-601(h) (2019) is reviewed under a two-part standard of review. We review de novo whether the individual seeking permissive intervention was afforded "a meaningful opportunity to be heard" as required by West Virginia Code § 49-4-601(h), and we review for an abuse of discretion a circuit court's decision regarding the "level and type of participation" afforded to individuals seeking permissive intervention, i.e., foster parents, pre-adoptive parents, and relative caregivers, pursuant to Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

2.      "Foster parents are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605[(a)(1)] (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required." Syllabus point 7, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

3.      "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein." Syllabus point 1, *Dunlap v. State Compensation Director*, 149 W. Va. 266, 140 S.E.2d 448 (1965).

i

4. "Foster parents, pre-adoptive parents, or [sic] relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court." Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

5. "The controlling standard that governs any dispositional decision remains the best interests of the child." Syllabus point 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

**Bunn, Justice:**

Petitioners herein, foster parents N.S.[1] and C.S. ("Foster Parents"), appeal the order entered by the Circuit Court of Kanawha County on June 22, 2021, denying their motion to intervene in the underlying child abuse and neglect proceedings involving the minor child, H.W. By that order, the circuit court reunified the child with her mother, Respondent B.S. ("Mother"), and, in doing so, denied the Foster Parents' motion to intervene. On appeal to this Court, the Foster Parents contend that the circuit court erred by denying them intervenor status and reunifying the child with the Mother rather than allowing the child to remain with her siblings in the Foster Parents' home. Upon a review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's order. The circuit court correctly denied the Foster Parents' motion to intervene in the underlying child abuse and neglect proceedings to avoid delaying the child's achievement of permanency through reunification with the Mother.[2]

---

[1]In matters such as the case sub judice that involve sensitive facts, we use initials, rather than full names, to refer to the parties. *See, e.g.*, *In re K.L.*, 241 W. Va. 546, 548 n.1, 826 S.E.2d 671, 673 n.1 (2019); *In re S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

[2]Although the Foster Parents also assign error to the circuit court's dispositional decision reunifying the child with the Mother, we find that, because the circuit court properly denied their motion to intervene, the Foster Parents, as non-parties, do not have standing to challenge the merits of this disposition of the child abuse and neglect proceeding on appeal, and, therefore, this issue is not properly before the Court for decision in this case. *See* Section III, *infra.*

# I.

## FACTUAL AND PROCEDURAL HISTORY

Prior to the underlying abuse and neglect proceeding, in 2018, the Mother's parental rights to two older children were involuntarily terminated; it appears that the children were younger than two years old at the time of termination. Both of these children were adopted by their paternal biological grandparents, who are Petitioners/Foster Parents in the instant proceeding.

In late 2019, the Mother gave birth to H.W., the child at issue in this case. Throughout her pregnancy with H.W., the Mother tested positive for methamphetamine. As a result of the prior involuntary termination of the Mother's parental rights to H.W.'s sisters in the previous abuse and neglect case, in addition to the Mother's apparent substance abuse addiction, the additional Respondent herein, the West Virginia Department of Health and Human Resources ("DHHR"), filed the underlying abuse and neglect petition, removed H.W. from the Mother's care, and placed the child with the Foster Parents.[3] In February 2020, the Mother stipulated to the petition's allegations. The

---

[3]All three children—H.W. and her two siblings who have been adopted by the Foster Parents—have the same biological mother and father, and, thus, the Foster Parents who are the siblings' paternal biological grandparents also are H.W.'s paternal biological grandparents. As H.W.'s grandparents, identifying the Foster Parents as the child's "relative caregivers," rather than as her "foster parents," might have been more accurate to describe this familial relationship. However, because the Foster Parents have characterized themselves as the child's "foster parents"; none of the parties to this appeal challenge this nomenclature; and the intervention statute includes "[f]oster parents" and "relative caregivers" in the same category of individuals, it is not necessary to

2

circuit court then adjudicated the Mother as abusive and/or neglectful and granted her a post-adjudicatory improvement period, which it extended in September 2020.

In May 2021, after the child had been in the Foster Parents' care for approximately seventeen months, the Foster Parents moved to intervene. The circuit court conducted a hearing on the Foster Parents' intervention motion in June 2021, and ultimately held their motion in abeyance but permitted the Foster Parents' attorney to "monitor and participate" in the dispositional hearing. The Foster Parents' attorney did not object to this arrangement. Two weeks later, the circuit court held the dispositional hearing, and found that the Mother had corrected the conditions of abuse and neglect, ordered that the child be reunified with the Mother, and denied the Foster Parents' motion to intervene. Specifically, the circuit court explained its rulings as follows:

> The [c]ourt **FINDS** that reunification is in the best interest of the minor child. The [c]ourt further **FINDS** that the timeframes contemplated by W. Va. Code § 49-4-111(b)(3) and *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018)[,] have been specifically and directly impacted by lapses in services due to the COVID-19 pandemic and through no fault of Respondent Mother. The [c]ourt **FINDS** that Respondent Mother substantially complied with all remedial and reunification services, thereby correcting the conditions giving rise to the filing of the Petition.
>
> . . . .
>
> Accordingly, the motion of [C.S.] and [N.S.] to intervene is **DENIED**.

recharacterize Petitioners for purposes of our decision in this case. *See* W. Va. Code § 49-4-601(h) (2019).

(Emphasis in original). The Foster Parents now appeal from the circuit court's June 22, 2021 order memorializing these rulings.

## II.

## STANDARD OF REVIEW

The case sub judice comes to this Court on appeal from the circuit court's order denying the Foster Parents' motion to intervene in the underlying child abuse and neglect proceedings. Although we have previously considered whether a circuit court erred by denying a motion to intervene in a child abuse and neglect proceeding, we have not adopted a standard of review that is specifically applicable to this issue. The right to intervene in an abuse and neglect proceeding is governed by statute,[4] and we have previously applied the general standard of review that governs our consideration of statutory law.[5] *See, e.g.*, *In re P.F.*, 243 W. Va. 569, 848 S.E.2d 826 (2020); *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015). While proper, this standard does not specifically address motions to intervene in the context of child abuse and neglect proceedings.

---

[4]*See* W. Va. Code § 49-4-601(h) and text, *infra*, at Section III.

[5]*See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

In other cases, we have used the general abuse and neglect standard of review,[6] which is somewhat at odds with the procedural posture of this case. *See, e.g.*, *In re N.S.*, No. 21-1003, 2022 WL 1505971 (W. Va. May 12, 2022) (memorandum decision); *In re A.R.*, No. 20-0775, 2021 WL 1549789 (W. Va. Apr. 20, 2021) (memorandum decision). Here, the Foster Parents appeal both from the circuit court's ruling denying their motion to intervene, which they are permitted to do, and from the circuit court's dispositional decision of reunification, which, as non-parties to these proceedings, the Foster Parents are not permitted to challenge on appeal.[7] Thus, because the general standard of review for child abuse and neglect proceedings applies to decisions on the merits of those cases, it does not squarely address the issue of the circuit court's denial of the Foster Parents' motion to intervene.

---

[6]*See* Syl. pt. 1, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) ("Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.").

[7]For further explanation of the limits of the Foster Parents' appellate rights in this case as individuals who requested, but were denied, intervenor status, see Section III, *infra*.

Although we have adopted standards of review governing motions to intervene in civil cases generally,[8] we have also acknowledged that, because the right to intervene in child abuse and neglect proceedings is specifically granted by statute, "the West Virginia Rules of Civil Procedure regarding intervention generally do not apply to abuse and neglect proceedings under Chapter 49." *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 736 n.12, 815 S.E.2d 540, 547 n.12 (2018) (citation omitted). Thus, by extension, the civil motion to intervene standards of review do not apply to motions to intervene in the abuse and neglect context. Nevertheless, insofar as we found the Rules of Civil Procedure regarding intervention instructive to our analysis of the merits of a motion to intervene in a child abuse and neglect proceeding, *see id.*, we likewise look to our civil motion to intervene standards of review for guidance in determining the proper standard of review applicable to our consideration of the circuit court's denial of the Foster Parents' motion to intervene in the underlying abuse and neglect proceeding.

In adopting our standards of review for motions to intervene in the civil case context, we differentiated between the standard of review that is applicable to a permissive motion to intervene and that which is applicable to a motion to intervene as a matter of

---

[8]*See* Syl. pts. 2 and 3, *SWN Prod. Co., LLC v. Conley*, 243 W. Va. 696, 850 S.E.2d 695 (2020) (Syl. pt. 2: "A circuit court's decision on an applicant's request for permissive intervention under Rule 24(b) of the West Virginia Rules of Civil Procedure is reviewed under an abuse of discretion standard."; Syl. pt. 3: "The standard of review of circuit court rulings on the elements governing a timely motion to intervene as a matter of right under Rule 24(a) of the West Virginia Rules of Civil Procedure is de novo.").

6

right. As to a permissive intervention motion in a civil case, we held that "[a] circuit court's decision on an applicant's request for permissive intervention under Rule 24(b) of the West Virginia Rules of Civil Procedure is reviewed under an abuse of discretion standard." Syl. pt. 2, *SWN Prod. Co., LLC v. Conley*, 243 W. Va. 696, 850 S.E.2d 695 (2020). Here, as will be discussed further below, the Foster Parents also sought to intervene permissively insofar as they are not within the category of individuals who are afforded intervention as a matter of right under West Virginia Code § 49-4-601(h) (2019), and the requirements of Syllabus point 7 of *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540, have not been met in this case. However, we find the abuse of discretion standard applicable to permissive civil motions to intervene to be ill-advised in the context of a permissive intervention motion in the child abuse and neglect context. First, the rule establishing permissive intervention in civil cases is couched in terms of the circuit court's exercise of its discretion, but the statute governing intervention in child abuse and neglect proceedings has no such discretionary language. *Compare* W. Va. R. Civ. P. 24(b) *with* W. Va. Code § 49-4-601(h). *See also SWN*, 243 W. Va. at 702, 850 S.E.2d at 701 (noting that, "as to permissive intervention, the text of Rule 24(b) governing permissive intervention specifically invokes language directing courts to exercise their discretion in considering issues of delay of the action or prejudice to the original parties"). West Virginia Code § 49-4-601(h) directs that

> [i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. *Foster parents,*

7

> *pre-adoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.*

(Emphasis added). *See also* Syl. pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). Because this statute employs mandatory language, an individual seeking to permissively intervene in a child abuse and neglect proceeding has "a meaningful opportunity to be heard," W. Va. Code § 49-4-601(h), as long as that individual is within the class of persons specifically afforded that right, i.e., "[f]oster parents, pre-adoptive parents, and relative caregivers," *id.*

Second, unlike a rule-governed civil motion to intervene, the abuse and neglect motion to intervene is governed by statute, and, typically, we review circuit court rulings involving the interpretation of a statute de novo. *See, e.g.*, Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). *See also* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

Moreover, we also review anew a circuit court's rulings applying the law to the facts of a case: "We review the circuit court's application of the law to undisputed facts *de novo*." *In re Petrey*, 206 W. Va. 489, 490, 525 S.E.2d 680, 681 (1999). *Accord State ex rel. United Mine Workers of Am., Loc. Union 1938 v. Waters*, 200 W. Va. 289, 298, 489 S.E.2d 266, 275 (1997) ("[r]eviewing *de novo* a matter which calls for the application of law to undisputed facts"); *Lawrence v. Cue Paging Corp.*, 194 W. Va. 638, 641, 461 S.E.2d 144, 147 (1995) (per curiam) ("Inasmuch as the ruling of the circuit court on that point involves an application of the law to the facts, our review of that ruling is *de novo*." (citations omitted)). *See also* Syl. pt. 1, in part, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996) ("Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*.").

With respect to permissive intervention in child abuse and neglect proceedings, we have held that "the level and type of participation" a circuit court affords to "[f]oster parents, pre-adoptive parents, or [sic] relative caregivers . . . entitled to a meaningful opportunity to be heard" is subject to the circuit court's discretion.[9] Syl. pt. 4, in part, *Faircloth*, 240 W. Va. 729, 815 S.E.2d 540. But the circuit court's exercise of such

---

[9]However, in certain circumstances, which we find do not exist in this case, *see* Section III, *infra*, a foster parent may be entitled to intervention as a matter of right. *See* Syl. pt. 7, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

discretion does not change the initial inquiry of whether the circuit court properly applied the statutory law to the facts of the case to grant such individual "a meaningful opportunity to be heard" in the first instance as required by § 49-4-601(h). In other words, this mandatory statutory language does not allow a circuit court discretion regarding whether "[f]oster parents, pre-adoptive parents, and relative caregivers" should be provided a "meaningful opportunity to be heard," but only as to whether the level and type of participation provided to such individual should rise to full intervenor status. *See* W. Va. Code § 49-4-601(h).

Therefore, we find a multifaceted standard of review of permissive motions to intervene in child abuse and neglect proceedings to be more appropriate and consistent with our prior precedent than the abuse of discretion standard we apply to civil motions to intervene because a hybrid analysis is required by the mandatory statutory language and our decisions affording circuit courts discretion in the application of that law to the fact patterns of individual cases. Accordingly, we now hold that a circuit court's decision on an individual's motion for permissive intervention in a child abuse and neglect proceeding pursuant to West Virginia Code § 49-4-601(h) (2019) is reviewed under a two-part standard of review. We review de novo whether the individual seeking permissive intervention was afforded "a meaningful opportunity to be heard" as required by West Virginia Code § 49-4-601(h), and we review for an abuse of discretion a circuit court's decision regarding the "level and type of participation" afforded to individuals seeking permissive intervention, i.e., foster parents, pre-adoptive parents, and relative caregivers,

10

pursuant to Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).[10] Guided by this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the Foster Parents assert two distinct assignments of error. First, the Foster Parents contend that the circuit court erred by denying their motion to intervene. Second, the Foster Parents argue that the circuit court erred by reunifying the child with the Mother instead of terminating the Mother's parental rights and continuing the child's placement with the Foster Parents where the child had been in foster care[11] for more than fifteen of the previous twenty-two months, as contemplated by West Virginia

---

[10]Insofar as this case does not involve intervention in child abuse and neglect proceedings as a matter of right, we need not address the standard of review applicable to such a motion to resolve the matter presently before us. *See infra* Section III.

[11]Throughout the limited appendix record in this case, the circuit court repeatedly referred to Petitioners as "foster parents," and the circuit court relied on this characterization of their status when it ultimately denied their motion to intervene. *See, e.g.*, Dispositional Hearing Tr. 22, 24 (June 14, 2021); Motion to Intervene Hearing Tr. 12 (June 1, 2021); Order Denying Motion to Intervene 3 (June 22, 2021). The record before us does not contain sufficient information upon which to reclassify Petitioners as a different type of placement for H.W., such as relative caregivers, nor do the parties ask us to do so in their arguments on appeal to this Court. *See* Syl. pt. 2, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991) ("Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes." (internal citations and quotations omitted)). Accordingly, we decide this case based on the characterization of Petitioners by the circuit court, the parties, and the Petitioners, themselves, as the child's "foster parents."

Code § 49-4-605(a)(1) (2018). In support of this argument, the Foster Parents claim that continuing the child's placement with them would have honored the sibling preference by keeping H.W. in the same household with her two older sisters and served H.W.'s best interests. All of the Respondents herein—the DHHR, the Mother, and the child's Guardian ad Litem—contend that the circuit court did not err in denying the Foster Parents' motion to intervene and reunifying the child with her Mother, and urge this Court to affirm the circuit court's rulings. We will address these assigned errors in turn.

We find no error in the circuit court's denial of the Foster Parents' motion to intervene. In support of their argument, the Foster Parents rely on Syllabus point 7 of *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540, which provides that "[f]oster parents are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605[(a)(1)] (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required." While the Foster Parents correctly assert that the temporal requirements of these statutes had been met, they fail to acknowledge that the circuit court found that the statutory exceptions to these time limits applied to the facts of this case. Application of these exceptions curtails the requirement that the DHHR seek termination of parental rights and impacts the right of the Foster Parents to seek intervenor status.

Before reaching the merits of the parties' arguments, we first must review the statutory framework within which they are raised. The Foster Parents' ability to

intervene in the instant child abuse and neglect proceeding is governed by statute. *See generally* W. Va. Code §§ 49-4-101 to -610 (2015 & Supp. 2021) (establishing statutory framework for child abuse and neglect proceedings). *See also In re K.L.*, 241 W. Va. 546, 553, 826 S.E.2d 671, 678 (2019) (observing that "[c]hild abuse and neglect proceedings are governed by statute" (citations omitted)); *In re Beth Ann B.*, 204 W. Va. 424, 427, 513 S.E.2d 472, 475 (1998) (referring to "statutory scheme applicable in abuse and neglect proceedings"). West Virginia Code § 49-4-601(h) provides that,

> [i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. *Foster parents*, pre-adoptive parents, and relative caregivers *shall also have a meaningful opportunity to be heard*.

(Emphasis added).

Because an individual's right to intervene in child abuse and neglect proceedings is established by statute, it is necessary to review the tenets of statutory construction that will guide our determination of the Foster Parents' right to the relief they seek. We first consider and give effect to the intent of the Legislature in enacting the statutory provision at issue. Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). Where the language used by the Legislature is plain, we need only apply the statute without further construction. In other words, "[w]here the language of a statute is plain and unambiguous, there is no basis for

13

application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein." Syl. pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965). *Accord* Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Where, however, the legislative language is ambiguous, we must construe the statutory language before we can apply it. Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied."). Applying these tenets to the intervention statute, West Virginia Code § 49-4-601(h), we find its language to be plain and to clearly grant to foster parents "a meaningful opportunity to be heard" in child abuse and neglect proceedings. *See* Syl. pt. 1, *Dunlap*, 149 W. Va. 266, 140 S.E.2d 448. However, we must determine whether the Foster Parents have a right to intervene in the underlying child abuse and neglect proceedings as contemplated by Syllabus point 7 of *Faircloth*, 240 W. Va. 729, 815 S.E.2d 540.

The first statute referenced by *Faircloth*, West Virginia Code § 49-4-605, requires the DHHR to seek termination of a parent's parental rights

> [i]f a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home[.]

W. Va. Code § 49-4-605(a)(1) (2018). However, the DHHR's duty is qualified by the prefatory language of this section, which provides that "the department shall file or join in

a petition or otherwise seek a ruling in any pending proceeding to terminate parental

rights," "[e]xcept as provided in § 49-4-605(b) of this code." W. Va. Code § 49-4-605(a).

Subsection (b) then directs, in relevant part, that

> [t]he department may determine not to file a petition to terminate parental rights when . . .
>
> . . . .
>
> [t]he department has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home.

W. Va. Code § 49-4-605(b)(3).[12] Despite the multifaceted instruction provided by this

statute, we find the language to be plain thus allowing it to be applied without further

construction. *See* Syl. pt. 1, *Dunlap*, 149 W. Va. 266, 140 S.E.2d 448.

The second statute cited by the *Faircloth* holding, West Virginia Code § 49-

4-610, adopts temporal limits similar to those set forth in West Virginia Code § 49-4-

605(a)(1) by providing, with respect to time limits for improvement periods, that,

> [n]otwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto

---

[12]Although the Foster Parents also are the child's grandparents and, thus, are the child's relatives, *see supra* note 3, the additional exception alleviating the DHHR of its obligation to seek a termination of parental rights when the time limits of West Virginia Code § 49-4-605(a)(1) (2018) have been met when, "[a]t the option of the department [DHHR], the child has been placed *permanently* with a relative by court order" does not apply to the facts of this case. W. Va. Code § 49-4-605(b)(1) (emphasis added). This exception does not apply to the case sub judice because the Foster Parents served as a *temporary* placement for H.W., and were not her *permanent* placement as contemplated by the statute.

> may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, *unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.*

W. Va. Code § 49-4-610(9) (2015) (emphasis added). We likewise find this statutory language to be plain and capable of application without interpretation. *See* Syl. pt. 1, *Dunlap*, 149 W. Va. 266, 140 S.E.2d 448.

In addition to the statutes cited by *Faircloth*, the Foster Parents further rely on West Virginia Code § 49-4-111 to support their arguments that they should have been granted intervenor status and that H.W. should have remained in their care. Specifically, the Foster Parents argue that H.W. should have remained with her siblings, rather than being reunited with the Mother, because the temporal limits of this statute have been satisfied. In this regard, West Virginia Code § 49-4-111(b) provides, in pertinent part, that

> [w]hen a child has been placed in a foster care arrangement for a period in excess of eighteen consecutive months, and the department determines that the placement is a fit and proper place for the child to reside, the foster care arrangement may not be terminated unless the termination is in the best interest of the child and:
>
> . . . .
>
> (2) The foster care arrangement is terminated due to the child being returned to his or her parent or parents; [or]
>
> (3) The foster care arrangement is terminated due to the child being united or reunited with a sibling or siblings[.]

16

W. Va. Code §§ 49-4-111(b)(2-3) (2015). We also find this statutory language to be plainly stated with no need for further consideration of its intended meaning. *See* Syl. pt. 1, *Dunlap*, 149 W. Va. 266, 140 S.E.2d 448. As with the above-quoted statutes referenced in *Faircloth*, the directives of West Virginia Code § 49-4-111(b) are not absolute. The DHHR is authorized to remove a child from a lengthy foster care placement where, as here, the removal is occasioned by the reunification of the child with his/her parent. *See* W. Va. Code § 49-4-111(b)(2).

In its order denying the Foster Parents' motion to intervene and ruling that the disposition that would serve H.W.'s best interests was the reunification of H.W. with her Mother, the circuit court rejected the notion that either the statutes referenced in *Faircloth*; the *Faircloth* decision itself; or West Virginia Code § 49-4-111 required termination of the Mother's parental rights. Rather, under the facts of this case, which remained pending during the height of the COVID-19 global pandemic, the circuit court specifically ruled in its June 22, 2021 order that

> [t]he [c]ourt **FINDS** that reunification is in the best interest of the minor child. The [c]ourt further **FINDS** that the timeframes contemplated by W. Va. Code § 49-4-111(b)(3) and *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018)[,] have been specifically and directly impacted by lapses in services due to the COVID-19 pandemic and through no fault of Respondent Mother. The [c]ourt **FINDS** that Respondent Mother substantially complied with all remedial and reunification services, thereby correcting the conditions giving rise to the filing of the Petition.

(Emphasis in original). In light of this ruling, reunification of H.W. with her Mother was proper under the dispositional statute, West Virginia Code § 49-4-604, which requires termination "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future," W. Va. Code § 49-4-604(c)(6) (2020). Here, the circuit court found that the Mother had corrected these conditions through her compliance with services in this case.

While the operation of legislative exceptions applied to halt the statutory time limits that would have entitled the Foster Parents to intervention as a matter of right in this case pursuant to Syllabus point 7 of *Faircloth*, 240 W. Va. 729, 815 S.E.2d 540, as the child's foster parents, they nevertheless had the right to be heard during the underlying abuse and neglect proceedings. Pursuant to West Virginia Code § 49-4-601(h),

> [i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. *Foster parents*, pre-adoptive parents, and relative caregivers *shall also have a meaningful opportunity to be heard*.

(Emphasis added). We have explained that "[f]oster parents, pre-adoptive parents, or [sic] relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court." Syl. pt. 4, in part, *Faircloth*, 240 W. Va. 729, 815 S.E.2d 540. Despite denying the Foster Parents' intervention motion, the circuit court nevertheless allowed the

18

Foster Parents' attorney, on their behalf, to monitor and participate in the abuse and neglect proceedings occurring after their motion hearing. In response to this ruling, the Foster Parents' counsel specifically stated, "I would have no objection to monitoring." We find no error in the circuit court's decision to deny the Foster Parents' intervention motion while permitting their counsel to monitor and participate in the ongoing child abuse and neglect proceedings involving H.W.

Furthermore, we reject the Foster Parents' contentions that they were entitled to intervene because they had had custody of the child before the commencement of the underlying child abuse and neglect proceedings. *See* W. Va. Code § 49-4-601(h) (providing, in part, that "[i]n any proceeding pursuant to this article, *the party or parties having custodial* or other parental *rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses*" (emphasis added)). From the sparse appendix record in this case,[13] it is apparent that H.W. was placed with the Foster Parents incident to the DHHR's

---

[13]The sparse appendix record likely is due to the confidential nature of child abuse and neglect cases and the Foster Parents' inability to access the circuit court's record of the proceedings below because they were not parties to those proceedings. *See In re J.L.*, 234 W. Va. 116, 121, 763 S.E.2d 654, 659 (2014) (recognizing that "[b]ecause child and abuse proceedings are confidential in nature, access to the records of such cases is limited" (citations omitted)). *See also* W. Va. R. P. Child Abuse & Neglect Proceeds. 6a(b), in part ("All records and information maintained by the courts in child abuse and neglect proceedings shall be kept confidential except as otherwise provided in W. Va. Code, Chapter 49 and this rule.").

initiation of these proceedings and that no custodial arrangement existed prior to the filing

of the petition. To this end, we have recognized that

> West Virginia Code § 49-4-601(h) establishes a "two-tiered framework." *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946, *3 (W. Va. May 5, 2017) (memorandum decision). Parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." *See* W. Va. Code § 49-4-601(h). In contrast, however, "[f]oster parents, preadoptive parents, and relative caregivers" are only granted the right to "a meaningful opportunity to be heard." *See id.* Moreover, for purposes of this statute, the term "custodial" refers to a person who became a child's custodian "*prior* to the initiation of the abuse and neglect proceedings[.]" [*In re*] *Jonathan G.*, 198 W. Va. [716,] at 727, 482 S.E.2d [893,] at 904 [(1996)] (emphasis added)[, *modified on other grounds by State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018)].

*State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018) (emphasis in

original; footnote omitted). *Accord In re N.S.*, 2022 WL 1505971, at *4-5; *State ex rel.*

*R.H. v. Bloom*, 2017 WL 1788946, at *3. *See also In re Jonathan G.*, 198 W. Va. at 727,

482 S.E.2d at 904 (construing prior version of W. Va. Code § 49-4-601(h) affording

intervention rights to child's "custodian" as meaning "an individual who was a lawful

custodian *prior* to the initiation of abuse and neglect proceedings" as compared to foster

parents whose "status as a child's custodian results from the filing of abuse and neglect

charges and exists subject to and under the auspices of the DHHR's role as the child's legal

custodian" (emphasis in original)). Thus, because the Foster Parents did not, prior to the

institution of the instant abuse and neglect proceeding, have "custodial . . . rights or

responsibilities to the child," W. Va. Code § 49-4-601(h), they were not entitled to intervention as a matter of right in these proceedings.

Finally, to the extent the Foster Parents argue that the circuit court erred by not terminating the Mother's parental rights, such dispositional decision is not properly before the Court. Because the Foster Parents were not granted intervenor status, their ability to bring the instant appeal is limited to their role in the proceedings below as foster parents who requested, but were denied, intervenor status. *See* Syl. pt. 4, in part, *Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 ("Foster parents who have been granted the right to intervene are entitled to all the rights and responsibilities of any other party to the action."); Syl. pt. 1, *In re Harley C.*, 203 W. Va. 594, 509 S.E.2d 875 (1998) ("Foster parents who are granted standing to intervene in abuse and neglect proceedings by the circuit court are parties to the action who have the right to appeal adverse circuit court decisions."). *But see* Syl. pt. 1, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 ("The foster parents' involvement in abuse and neglect proceedings should be separate and distinct from the fact-finding portion of the termination proceeding and should be structured for the purpose of providing the circuit court with all pertinent information regarding the child. The level and type of participation in such cases is left to the sound discretion of the circuit court with due consideration of the length of time the child has been cared for by the foster parents and the relationship that has developed. To the extent that this holding is inconsistent with *Bowens v. Maynard,* 174 W. Va. 184, 324 S.E.2d 145 (1984), that decision is hereby modified.").

Thus, although the Foster Parents may challenge the circuit court's denial of their intervention motion, as non-parties they do not have standing to challenge the further rulings of the circuit court concerning the underlying abuse and neglect case. *See State ex rel. H.S.*, 240 W. Va. at 647 n.10, 814 S.E.2d at 664 n.10 ("Unless the circuit court determines that the facts and circumstances warrant granting intervener [sic] status to a person who obtains physical custody of a child after the filing of the abuse and neglect case, that person is not a party litigant in the case." (citation omitted)).[14] *See also* W. Va. R. P. Child Abuse & Neglect Proceeds. 49, in part (recognizing that "[a]ll parties to the proceeding in the court from which the appeal [from an abuse and neglect order] is taken, including the guardian(s) ad litem for the minor children, shall be deemed parties in the Supreme Court of Appeals"); W. Va. R. P. Child Abuse & Neglect Proceeds. 3(m) (defining "'[p]arties'" in child abuse and neglect proceedings as "the petitioner, co-

_____

[14]In this same vein, the Foster Parents cannot challenge the circuit court's ruling to the extent it determined that H.W. should be reunified with the Mother rather than remaining in the Foster Parents' household with her siblings. To support their argument that the siblings should not have been separated, but, rather, that the children should have remained in the same household, the Foster Parents attempt to advocate for H.W.'s best interests but, in doing so, repeatedly focus upon the best interests of the child's *siblings*, who the Foster Parents have adopted, and not on the best interests of H.W., herself. *See* Petitioners' Br. 17 ("H.W. created a lasting bond with the [Foster Parents] and more importantly the siblings who are now devastated at the loss of their sister. This Court can only imagine these two older girls growing older wondering what happened to their younger sister who was snatched from their home by a [c]ourt of law and who is now not allowed to have visits with them because of advice from attorneys trying to win an appeal. The best interest of this child is clearly to be returned to [the Foster Parents] and her siblings."). However, the circuit court, in rendering its rulings, properly considered the best interests of the only child subject to these proceedings, H.W., and disposed of the matter in accordance with its determination of her best interests, which disposition encouraged continued sibling visitation following reunification of the child with the Mother.

petitioner, respondent, adjudicated battered parent, and child" (emphasis omitted)). *But see* W. Va. R. P. Child Abuse & Neglect Proceeds. 3(o), in part (noting that "'[p]ersons entitled to notice and the right to be heard'" in child abuse and neglect proceedings are "persons *other than parties* who include . . . foster parents, preadoptive parents, or custodial relatives providing care for the child" (first emphasis omitted; second emphasis added)).

In conclusion, this Court is not unsympathetic to the Foster Parents' desire to participate more fully in the underlying proceedings to safeguard what they perceive to be the child's best interests. Nevertheless, the ultimate goal in abuse and neglect proceedings is the repair of the conditions in the home that led to the petition's filing and the reunification of the child(ren) with his/her parent(s) when such reunification will serve the child(ren)'s best interests. *See, e.g.*, W. Va. Code § 49-1-105(b)(3) (2015) (identifying purpose of "[t]he child welfare . . . system" as including to "[p]reserve and strengthen the child family ties"); W. Va. Code § 49-4-604(a)(2) (requiring family case plan to "facilitate the return of the child to his or her own home"). *See also Faircloth*, 240 W. Va. at 741, 815 S.E.2d at 552 ("Certainly the over-arching purpose of our abuse and neglect statutory construct continues to be the correction of conditions of abuse and neglect and the return, if reasonably possible, of the children to their homes[,] . . . . [but] *only* when reunification fully serves the best interests of the child do statutorily required efforts to reunite the family dovetail with the goal of abuse and neglect proceedings." (emphasis in original)); *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 258, 470 S.E.2d 205, 212 (1996) (recognizing

23

goal "to facilitate the reunification of families whenever that reunification is in the best interests of the children involved").

The vast majority of child abuse and neglect cases that this Court considers, though, never realize this pinnacle of successful resolution of an abuse and neglect proceeding through reunification of the family. Here, that delicate balance of sufficient improvement by the parent to be able to provide appropriate care and a safe and suitable home for the child appears to have been achieved, and the circuit court correctly determined that affording the Foster Parents full intervenor status would do nothing more than delay the implementation of this reunification, which disposition the court found to be in the child's best interests. Nonetheless, we commend the Foster Parents for their willingness to provide a refuge with safe and appropriate care for the child upon her removal from the Mother's care when the DHHR initiated this proceeding. As we previously lamented in *Jonathan G.*,

> [i]n the instant case, it is difficult not to be sympathetic to the [foster parents'] effort to participate, not only because they had Jonathan G. with them for so long, providing him with love, constancy, and care in his earliest years; but also because the significant issues relating to a child's life and fate must not be decided in some artificial procedural vacuum. . . . What makes balancing their right to participate, and the extent of such participation, against the natural rights of the biological parents, as well as the statutory objective of reunifying Jonathan G. with them, so difficult is that both sets of parents, foster and biological, obviously loved and wanted this child. As a result of this love, and their strong commitment to this child, the two sets of parents became adversaries during these proceedings.

24

*In re Jonathan G.*, 198 W. Va. at 729, 482 S.E.2d at 906. *See also In re Clifford K.*, 217 W. Va. 625, 646, 619 S.E.2d 138, 159 (2005) ("The tragic events that have led to the circumstances in which Z.B.S. currently finds himself have resulted in litigation over his permanent custodial placement only because too many people love this little boy. Oh that all of the children whose fates we must decide would be so fortunate as to be too loved.").

The governing statutory law has clearly established when the DHHR is required to seek a ruling on the termination of a parent's rights to his/her child(ren) and when the DHHR is relieved from such duty. Here, as we have explained, the DHHR was not obligated to seek termination of the Mother's parental rights to H.W. because the various statutory exceptions applied to excuse the lapse of time in this case. Moreover, the preeminent consideration in child abuse and neglect proceedings is the best interest of the child subject to such proceedings. In other words, "the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children," Syl. pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996), and, as was apparent in the circuit court's order in this case, "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). In this case, both the DHHR and the child's Guardian ad Litem recommended that H.W. be reunified with her Mother, and the circuit court determined that reunification of the child with the Mother was the disposition that would serve the child's best interests. In making this disposition, the circuit court also decided that affording the Foster Parents full intervenor status was not necessary to achieve

25

reunification, but would likely only delay it. Therefore, the circuit court correctly denied their intervention motion. *See* Syl. pt. 1, in part, *In Int. of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security."). *Cf.* Syl. pt. 2, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 ("The reference to 'exceptional cases' contained in W. Va. Code § 48-9-103(b) (2001) (Repl. Vol. 2004) signifies unusual or extraordinary cases, and, accordingly, *a court should exercise its discretion to permit intervention* in such unusual or extraordinary cases *only when intervention is likely to serve the best interests of the subject child(ren)*." (emphasis added)). Therefore, we conclude that the circuit court properly denied the Foster Parents' motion to intervene in the underlying child abuse and neglect proceedings, and we affirm the circuit court's ruling.

## IV.

## CONCLUSION

For the foregoing reasons, the June 22, 2021 order of the Circuit Court of Kanawha County denying the Foster Parents' motion to intervene in the underlying child abuse and neglect proceedings is hereby affirmed.

Affirmed.

26